## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CORDELL CHATMAN** | **CIVIL ACTION** |
| **VERSUS** | **NO. 23-1688** |
| **PLAQUEMINES PARISH GOVERNMENT, ET AL** | **SECTION "O" (5)** |

### MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**MAY IT PLEASE THE COURT:**

### I.      FACTS

On May 18, 2022, Deputy Sainato was on proactive patrol in the 900 block of Engineer's Road in Plaquemines Parish.   Deputy Sainato observed a vehicle pass him which appeared to have no license plate, and he initiated a traffic stop[1].  He approached the vehicle and observed the driver, Mallory Tuggles, the front passenger, Cordell Chatman, and two minor children in the rear of the vehicle. [2]

Deputy Sainato contacted dispatch with the identity of the occupants and learned that Mrs. Tuggles' driver's license was suspended and that she had an active felony warrant from Kenner.[3] During the stop, Deputy Sainato was told that a weapon was located in the glove box.[4]  Deputy Sainato retrieved the weapon and made it safe.[5]   He was provided with Mr. Chatman's identification, which was a Florida Department of Corrections prisoner information sheet.[6]  An NCIC check of Mr. Chatman returned the existence of a fugitive arrest warrant from Gretna, Louisiana.[7]  After a dispatcher verified that the warrant was active, she emailed Deputy Sainato

---

[1] Exhibit F, Declaration of Vincenzo Sainato at ¶ 1.
[2] Exhibit F, Declaration of Vincenzo Sainato at ¶ 2.
[3] Exhibit F, Declaration of Vincenzo Sainato at ¶ 3.
[4] Exhibit F, Declaration of Vincenzo Sainato at ¶ 4.
[5] Exhibit F, Declaration of Vincenzo Sainato at ¶ 5.
[6] Exhibit F, Declaration of Vincenzo Sainato at ¶ 6.
[7] Exhibit F, Declaration of Vincenzo Sainato at ¶ 7.

the NCIC sheet confirming the warrant.[8]  Both subjects were arrested and taken to jail.[9]  The felon in possession of a firearm charge was dismissed by the district attorney approximately 7 months following his arrest.

The claims against Deputy Sainato are for unreasonable/false arrest under § 1983, and state law claims of intentional infliction of emotional distress, false imprisonment, and for violations of the Louisiana constitution.  Plaintiff has **not** brought a claim for malicious prosecution, either under federal or Louisiana law. *See* Rec. Doc. 1.

## II.    LAW AND ANALYSIS

### A. Summary Judgment standard.

Summary judgment is appropriate when the evidence before a court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. Id. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains

---

[8] Exhibit F, Declaration of Vincenzo Sainato at ¶ 8.
[9] Exhibit F, Declaration of Vincenzo Sainato at ¶ 9.

no support for the non-moving party's claim." Stahl v. Novartis Pharm. Corp., 283 F.3d 254, 263 (5th Cir. 2002).

Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. Id. The court needs to consider only the cited materials. FED. R. CIV. P. 56(c)(3). Rule 56 does not require a court to "sift through the record in search of evidence to support a party's opposition to summary judgment." Willis v. Cleco Corp., 749 F.3d 314, 317 (5th Cir. 2014) (quoted source omitted). There can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322-23. This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." Little v. Liquid Air. Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that a genuine issue of material fact exists. *Hamilton v. Segue Software, Inc*., 232 F.3d 473, 477 (5thCir. 2000) (emphasis added). "'If the evidence is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Tech*. USA, Inc. v. Eni U.S. Operating Co., 671 F.3d 512, 517 (5th Cir. 2012) (*quoting Anderson*, 477 U.S. at 248)

    **B.**    **Plaintiff failed to respond to Deputy Sainato's request for admissions and, as such, the issues addressed in those requests must be deemed admitted.**

On March 22, 2024, this Honorable Court issued its Scheduling Order in this case. In doing so, the Court set a discovery deadline of December 11, 2024.[10] This Court further ordered that all

---

[10] R. Doc. 24.

dipositive motions should be filed in sufficient time to permit a submission date of December 11, 2024. On October 7, 2024, the undersigned timely sent discovery to Plaintiff, which included requests for admissions.[11] Plaintiff did not respond to the requests for admissions as of today's date. As a result, the requests should be deemed admitted. Those requests for admissions are as follows:

**REQUEST FOR ADMISSION NO. 1:**

Please admit that there was a Warrant for Your arrest out of Gretna, Louisiana, at the time of the May 18, 2022 Traffic Stop.

**REQUEST FOR ADMISSION NO. 2:**

Please admit that You were arrested pursuant to the Gretna, Louisiana Warrant on May 18, 2022.

**REQUEST FOR ADMISSION NO. 3:**

Please admit that You were in a relationship with Mallory Tuggles prior to the May 18, 2022 Traffic Stop.

**REQUEST FOR ADMISSION NO. 4:**

Please admit that You were aware that Mallory Tuggles owned and/or possessed the Firearm and/or any other firearm, weapon, handgun, pistol, prior to the May 18, 2022 Traffic Stop.

**REQUEST FOR ADMISSION NO. 5:**

Please admit that You were aware that the Firearm was contained in the glove box before the May 18, 2022 Traffic Stop.

**REQUEST FOR ADMISSION NO. 6:**

---

[11] Exhibit A, Email Transmitting Discovery including Attachments - Defendant's First Set of Interrogatories, Requests for Production, and Requests for Admission to Plaintiff.

Please admit that You were aware that the Firearm was contained in the glove box as Deputy Sainato approached the vehicle during the May 18, 2022 Traffic Stop.

**REQUEST FOR ADMISSION NO. 7:**

Please admit that the documents which you were holding at the time Deputy Sainato approached the vehicle during the May 18, 2022 Traffic Stop were contained in the vehicle's glove box before You first noticed Deputy Sainato's police vehicle behind You.

**REQUEST FOR ADMISSION NO. 8:**

Please admit that the documents which you were holding at the time Deputy Sainato approached the vehicle during the May 18, 2022 Traffic Stop were removed from the vehicle's glove box after You first noticed Deputy Sainato's police vehicle behind You.

**REQUEST FOR ADMISSION NO. 9:**

Please admit that You possessed Narcotics on May 18, 2022.

**REQUEST FOR ADMISSION NO. 10:**

Please admit that Mallory Tuggles possessed Narcotics on May 18, 2022.

**REQUEST FOR ADMISSION NO. 11:**

Please admit that You possessed used Narcotics on May 18, 2022.

**REQUEST FOR ADMISSION NO. 12:**

Please admit that You possessed used Narcotics on May 18, 2022.

**REQUEST FOR ADMISSION NO. 13:**

Please admit that You used used Narcotics while children were present in the vehicle on May 18, 2022.

**REQUEST FOR ADMISSION NO. 14:**

Please admit that You made a statement denying that you were a felon when asked during the May 18, 2022 Traffic Stop.

**REQUEST FOR ADMISSION NO. 15:**

Please admit that You made a statement admitting that Narcotics located in the vehicle belonged to You.

**REQUEST FOR ADMISSION NO. 16:**

Please admit that You produced Narcotics, specifically a marijuana cigarette and/or "joint" during the May 18, 2022 Traffic Stop.

**REQUEST FOR ADMISSION NO. 17:**

Please admit that You did not make any statement that You were unaware of the presence of the Firearm in the vehicle during the May 18, 2022 Traffic Stop.

**REQUEST FOR ADMISSION NO. 18:**

Please admit that You lived in the same residence as Mallory Tuggles on May 18, 2022.

**REQUEST FOR ADMISSION NO. 19:**

Please admit that You are the father to one or more of Mallory Tuggles' minor children.

**REQUEST FOR ADMISSION NO. 20:**

Please admit that You are a convicted felon.

**REQUEST FOR ADMISSION NO. 21:**

Please admit that You made a statement that You were unaware that You were prohibited from possessing a firearm during the May 18, 2022 Traffic Stop.

**REQUEST FOR ADMISSION NO. 23**:

Please admit that the Firearm was within your reach while seated in the vehicle on May 18, 2022.

**REQUEST FOR ADMISSION NO. 24:**

Please admit that Deputy Sainato ordered You not to reach for the glove compartment during the May 18, 2022 Traffic Stop.

Plaintiff has failed to respond to these requests for admission and the time to do so has passed on November 6, 2024. On October 11, 2024, while emailing about deposition availability, the undersign again reminded Plaintiffs counsel about the outstanding discovery, writing "Can you do 11/21? This is contingent on me receiving discovery responses with sufficient time to use them. We will not proceed go depos until that's done."[12] No response was received to that email and no discovery responses have been received.[13] As such, those Requests for Admission are deemed admitted by operation of law. Federal Rule of Civil Procedure 36 provides that [a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney. A shorter or longer time for responding may be ... ordered by the court.

"Rule 36's mandate is self-executing; in other words, a failure to answer or object to a request for admission within thirty days…constitutes an automatic admission and a court order deeming the request admitted is unnecessary." *Hicks v. Gilchrist Construction Co., L.L.C.*, Civil Action No. 19-01266, 2020 WL 13158070 at *1 (W.D.La. April 16, 2020). Admittedly Plaintiff is a pro se litigant; however, the Fifth Circuit has deemed this fact irrelevant when it comes to a plaintiff's failure to respond to requests for admission. In the matter of *Poon-Atkins v. Sappington*, 2022 WL 102042 (5th Cir. Jan. 10, 2022) (per curium), which involved an automobile accident, a pro se plaintiff was served with requests for admissions by the defendants, which directly addressed the merits of the plaintiff's claims, in addition to his right to recovery in the action. *Id.*

---

[12] Exhibit D – 11/11 Email from Blake Arcuri to Jessica Hawkins.
[13] Exhibit E – Affidavit of Blake J. Arcuri.

at 1. More specifically, the defendants asked the plaintiff to admit: 1) the plaintiff failed to yield to the right-of-way to one of the named defendants; 2) one of the defendants was not at fault for the automobile accident; and 3) the plaintiff was "not entitled to any damages or recovery whatsoever as a result of the allegations in the Complaint." *Id*.

The plaintiff failed to respond to the defendants' Requests for Admissions and, after some time, the defendants filed a Motion for Summary Judgment, asserting that the plaintiff's failure to respond to the requests for admissions deemed all requests admitted. *Id*. The district court granted summary judgment and, in doing so, expressed "sympath[y]" for the plaintiff as a pro se litigant but also recognized that Fed. R. Civ. P. 36 "unambiguously" requires dismissal, given the plaintiff's failure to respond to the defendants' admissions requests. *Id*. The plaintiff appealed to the Fifth Circuit, which upheld the district court's dismissal of the plaintiff's action, given her failure to timely respond to the defendants' admission requests. In doing so, the Fifth Circuit recognized that "[c]ourts have long recognized that summary judgment is proper where a party fails to respond to Rule 36 admissions requests on material facts." *Id*. 11 (*citing Hulsey v. State of Texas*, 929 F.2d 168, 171 (5th Cir. 1991). The Fifth Circuit further recognized that "Rule 56(c) specifies that 'admissions on file' can be an appropriate basis for granting summary judgment." I*d*. Indeed, "A party who makes an admission, whether express or by default, is bound by that admission for summary judgment purposes—not even contrary evidence can overcome an admission at the summary judgment stage." *Id*. (*citing In re Carney*, 258 F.3d 415, 420 (5th Cir. 2001).

By failing to respond to Deputy Sainato's Requests for Admission, Chatman has admitted that he had a warrant for his arrest at the time of the traffic stop,  that he was a convicted felon, that he was aware the firearm was in the glove box, that the firearm was within his reach at the time of the traffic stop, and that he had utilized narcotics with children in the vehicle prior to the

traffic stop.  These facts necessarily illustrate that Sainato had probable cause to arrest him for felon in possession of a firearm and on the unrelated Gretna warrant.

### C.    The existence of the Gretna warrant precludes any liability for false arrest/imprisonment.

While Defendant is entitled to summary judgment based on the failure to respond to RFAs, he is independently entitled to summary judgment purely based on the merits – and specifically the existence of the Gretna warrant. It cannot be disputed that Sainato was notified by dispatch that the Plaintiff had a warrant for his arrest out of Jefferson Parish at the time Sainato encountered him.[14] Furthermore, Plaintiff can produce no evidence to contradict the fact that dispatch emailed Sainato the NCIC printout which confirmed the existence of the warrant.[15]  This is fatal as to his federal and state false arrest claims.

La. C.Cr.P. art. 204 states that a warrant  "shall be directed to all peace officers in the state" and that it shall be executed "in any parish by any peace officer having authority in the territorial jurisdiction where the person arrested is to be found." A warrant of arrest remains in effect until it is executed.  *See* La. C.Cr.P. art. 205.  A claim of false arrest requires a plaintiff to demonstrate that the arrest was made without a warrant or with a warrant void on its face. *See Duboe v. City of New Orleans,* 909 F.2d 129, 132 (5th Cir.1990). Undisputed evidence that an arrest was made under a facially valid arrest warrant bars a § 1983 claim for false arrest. *See Smith v. Gonzalez*, 670 F.2d 522, 526 (5th Cir. 1982) ("Where an arrest is made under authority of a properly issued warrant, the arrest is simply not a false arrest."); *Casanova v. City of Brookshire*, 119 F. Supp. 2d 639, 652 (S.D. Tex. 2000) (*citing  Baker v. McCollan,* 443 U.S. 137, 139 (1979)).  An NCIC printout indicating the existence of an outstanding warrant establishes probable cause for arrest.  *Duckett*

---

[14] Exhibit C, Segment of Bodyworn camera footage in which Deputy Sainato is notified by PPSO Dispatch that Chatman has an active warrant out of Jefferson Parish; See also Exhibit F, Declaration of Vincenzo Sainato.
[15] Exhibit B, NCIC sheet emailed to Sainato reflecting warrant; see also Exhibit F, Declaration of Vincenzo Sainato.

*v. City of Cedar Park, Tex.*, 950 F.2d 272 (5th Cir. 1992)(*citing United States v. McDonald*, 606 F.2d 552, 553–54 (5th Cir.1979)).  The existence of probable cause for any offense is sufficient to defeat a claim of false arrest, even if the offense giving rise to probable cause is not the same as or even closely related to the offense articulated by the officer at the scene. *See Devenpeck v. Alford*, 543 U.S. 146, 153–55, 125 S.Ct. 588, 593–95, 160 L.Ed.2d 537 (2004).

Even when the existence of a warrant is discovered during an unlawful detention (which is not alleged here), the result is the same and a claim for false arrest fails. *See Utah v. Strieff* 579 U.S. 232, 240 (2016) (an arrest on a pre-existing warrant is a ministerial act compelled by the warrant regardless of the lawfulness of the initial stop or detention); *United States v. Green*, 111 F.3d 515, 521 (7th Cir. 1997) ("It would be startling to suggest that because the police illegally stopped an automobile, they cannot arrest an occupant who is found to be wanted on a warrant— in a sense requiring an official call of 'Olly, Olly, Oxen Free.' "); *Allen v. City of Columbia*, No. 3:23-1783-SAL-PJG, 2023 WL 6283360, at *4 (D.S.C. Aug. 15, 2023) (finding that the plaintiff's false arrest claim failed as a matter of law because "[e]ven assuming for the sake of argument that [the officer] lacked reasonable suspicion to initially detain Allen or probable cause to arrest him on the gun-related charges, [the officer] had a lawful duty to arrest Allen once he discovered the outstanding arrest warrant, rendering Allen's detention lawful from that point forward")

A prosecutor's dismissal of charges "is of no consequence" when considering a claim of false arrest. *Babb v. Dorman*, 33 F.3d 472, 479 (5th Cir. 1994). "The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted—indeed, for every suspect released." *Baker v. McCollan*, 443 U.S. 137, 145, 99 S. Ct. 2689, 2695, 61 L.Ed.2d 433 (1979).  "If there was probable cause for any of the charges made ... then the *arrest* was supported by probable cause, and the claim for false arrest

fails." *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (per curiam) (*quoting Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995))(emphasis theirs).

In *Clark v. Lafayette Police Department*, Magistrate Judge Whitehurst considered a similar fact pattern, where a Plaintiff who was approached by police and booked on "unrelated warrants" prior to being re-booked for possession of a firearm by a convicted felon – charge which was subsequently dismissed by the prosecution. He sued under the Fourth Amendment for false arrest and false imprisonment. *Clark v. Lafayette Police Dep't,* No. 6:18-CV-0058, 2018 WL 3602974 at *6 (W.D. La. July 11, 2018), *report and recommendation adopted*, No. 6:18-CV-00058, 2018 WL 3596104 (W.D. La. July 26, 2018). Plaintiff alleged that the arrest for felon w/ firearm was warrantless and should be considered distinct from the "unrelated warrants," claiming officers acted on "a hunch, without evidence," "with the goal of implicating him in the firearm charge." The Court correctly analyzed that "[f]alse-arrest and malicious-prosecution claims—as attacks on probable cause—'focus on the validity of the arrest . . " and that '[i]f there was probable cause for any of the charges made ... then the arrest was supported by probable cause . . .' *Cormier v. Lafayette City-Parish Consol. Government*, 493 Fed.Appx. 578, 583 (5th Cir. 2012) *quoting Wells v. Bonner*, 45 F.3d 90, 94–96 (5th Cir. 1995).

Judge Nanette Jolivette Brown also considered this issue. In *Durant v. Gretna City*, No. CV 19-147, 2020 WL 263669 (E.D. La. Jan. 17, 2020), *aff'd sub nom. Durant v. Brooks*, 826 F. App'x 331 (5th Cir. 2020), Judge Brown was presented with a plaintiff who was arrested for violating a Gretna Ordinance and for separate "unrelated warrants involving tickets not at issue here." *Id*. at *31. Distinct from the instant case is that Judge Brown was applying these facts not only to false arrest, but also to malicious prosecution (a claim not alleged by Chatman.) In her analysis, the Court analyzed the differences between malicious prosecution and false arrest claims,

noting they are "distinct causes of action," and that "the logic behind requiring probable cause for only one charge in the false arrest context is strong because the arrestee would have been arrested regardless of whether the office had probable cause ot arrest on all charges – assuming the officer had probable cause to arrest for at least one crime." *Id*. at \*32.  The Court granted summary judgment as to false arrest and false imprisonment but denied it as to malicious prosecution, finding that malicious prosecution had a different standard that was not dependent upon probable cause for a single offense. *Id*. at \*32-33.

In *Paz v. Hayden*, No. CV H-22-1898, 2024 WL 1719917 (S.D. Tex. Apr. 22, 2024), a Court considered a case where agents illegally entered a home without a search warrant for purposes of effecting an arrest warrant of a third-party non-resident of the home. Despite their unlawful entry, the plaintiff's claim for false arrest failed, with the Court stating "[n]evertheless, even if fact questions exist concerning the legality of Paz's detention, there is no question that his arrest was lawful based on his unrelated outstanding warrants." *Id*. at \*5.

It is undisputed that Sainato was told by dispatch that Chatman had a warrant for his arrest. It is undisputed that Sainato was provided with NCIC confirmation that Chatman had a warrant for his arrest. Under *Duckett, supra*, this alone is enough to establish probable cause.  There was probable cause to arrest Chatman under the warrant and thus plaintiff cannot meet his burden.

**D.    Sainato is entitled to qualified immunity.**

Plaintiff has no evidence to suggest that the warrant from Gretna was not facially valid, and more specifically, no evidence to suggest that Sainato did not receive verbal information from dispatch that the warrant was active. They further have no evidence that Sainato did not receive an NCIC sheet from dispatch which reflects a warrant in Gretna.  While there is no evidence that the warrant was invalid, the Fifth Circuit has routinely granted qualified immunity in situations where

officers arrested subjects for what they believed were valid warrants, but which were later found to have been invalid. In *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272 (5th Cir. 1992), the Fifth Circuit held an officer was objectively reasonable in relying upon a computer check for a warrant, despite the plaintiff's protestations that the warrant had been withdrawn, when it was later learned that the warrant was invalid. *Id.* at 280.

### E. State law claim of false arrest/imprisonment

Under Louisiana law, "[f]alse arrest and imprisonment occur when one arrests and restrains another against his will without a warrant or other statutory authority." *Kyle v. City of New Orleans*, 353 So.2d 969, 971 (La.1977). "[I]f police officers act pursuant to statutory authority in arresting and incarcerating a citizen, they are not liable for damages for false arrest and imprisonment." *Id.* Officers have legal authority to arrest a subject with an outstanding warrant. *Hicks v. Page,* No. CIV. 10-0084, 2011 WL 4007736 at *4 (W.D. La. Sept. 8, 2011). As already argued, Deputy Sainato was notified of the warrant both by radio and by email. He indisputably had probable cause and legal authority to arrest Chatman.

### F. State law claim of intentional infliction of emotional distress.

The basis for the tort of intentional infliction of emotional distress under Louisiana law is Louisiana Civil Code article 2315. *Barnes v. McQueen*, No. CV 14-2636, 2016 WL 872110 at *13 (E.D. La. Mar. 7, 2016)(*citing Nicholas v. Allstate Ins. Co.*, 765 So. 2d 1017, 1021 (La. 2000); *Hamilton v. Powell*, No. 13-2702, 2014 WL 6871410, at *7 (W.D. La. Dec. 2, 2014) To recover for intentional infliction of emotional distress, a plaintiff must establish three elements: " '(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his

conduct.' " *Id*. (citing *Rice v. ReliaStar Life Ins. Co.,* 770 F.3d 1122, 1137 (5th Cir. 2014) (*quoting White v. Monsanto Co*., 585 So. 2d 1205, 1209 (La. 1991)).

Unless the plaintiff alleges facts to show that Sainato acted in a manner that was atrocious, outrageous, or utterly intolerable, his claim must fail. *Id*. (*citing Obee v. Xerox Corp*., No. 99-470, 1999 WL 717637, at *2 (E.D. La. Sept. 14, 1999). "Indeed, the alleged conduct 'must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.'" *Id*. (citing *White,* 585 So. 2d at 1209). It must be intended or calculated to cause severe emotional distress; "some lesser degree of fright, humiliation, embarrassment, worry, or the like" is insufficient. *Id*. (*quoting White* at 1210). "The distress suffered must be such that no reasonable person could be expected to endure it." *Id*. (*quoting White* at 1210). "As the Fifth Circuit has explained, 'Louisiana courts, like courts in other states, have set a very high threshold on conduct sufficient to sustain an emotional distress claim, and the Louisiana Supreme Court has noted that courts require truly outrageous conduct before allowing a claim even to be presented to a jury.'" *Id.* (*quoting Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 756–57 (5th Cir. 2001).

The Fifth Circuit has characterized the threshold for severity of emotional distress suffered to substantiate a claim for intentional infliction of emotional distress as "unendurable." *Id*. (citing *Smith v. Amedisys Inc*., 298 F.3d 434, 450 (5th Cir. 2002)). "In *Smith v. Amedisys Inc.*, the Fifth Circuit, applying Louisiana law, found that impact of persistent verbal, physical, and sexual harassment on the plaintiff, who testified that she felt angry, belittled, embarrassed, depressed, disgusted, humiliated, horrified, incompetent, mad, very offended, and repulsed as a result of the conduct, was insufficient to meet the high threshold for severity." *Id*. In *Barnes,* Judge Morgan found the allegations that the officer "ran at Barnes, knocked Barnes down, and struck Barnes

repeatedly… berated, yelled at, and cursed at Barnes in front of his 7-year-old daughter, his 13-year-old son, and McQueen's neighbors… called Barnes a loser, told him he needed to get a job, and said he needs to pay more in child support" to not be "outrageous" conduct sufficient for such a claim to survive. *Barnes* at \*14. The Plaintiff simply cannot meet this burden. He was arrested on a valid warrant, and Sainato's actions are neither outrageous nor was Plaintiff's suffering "unendurable." Plaintiff is a convicted felon who had just been released from prison and was not experiencing anything new or unique.

      **G**.    **Louisiana constitutional claims.**

"Louisiana courts recognize the defense of qualified immunity to a plaintiff's claims that an actor's conduct under color of state law deprived him or her of a right secured by Article I, Section 5 of the Louisiana Constitution, the state counterpart to the Fourth Amendment to the United States Constitution." *Id*. at \*11 (citing *Moresi v. State Through Dep't of Wildlife & Fisheries,* 567 So. 2d 1081, 1094 (La. 1990); ("[W]e believe that a qualified immunity is justified in an action against state officers or persons acting under color of state law for damages caused by a violation of Article I, § 5 of the Louisiana Constitution. Consequently, a plaintiff's allegation and proof of conduct under color of state law that deprived him or her of a right secured by Article I, § 5 may not always assure the plaintiff of recovery.") That is, like in the qualified immunity context, the actions of the defendants must be judged for objective reasonableness when considered under state law. "If the defendant shows that the state constitutional right alleged to have been violated was not clearly established, the defendant is entitled to qualified immunity." Plaintiff is unable to prove any violation of the Louisiana constitution and thus this claim should be dismissed.

### III.    CONCLUSION

By operation of law, the Requests for Admissions should be deemed admitted, with said admissions clearly establishing that this matter has no basis.  Alternatively, Sainato is entitled to summary judgment in this matter on all claims.  It is undisputed that he was notified that Chatman had an open warrant in Jefferson Parish.  Thus, he had probable cause to arrest him.  All claims against Deputy Sainato should be dismissed with prejudice, and at Plaintiff's cost.

Respectfully submitted,

**FROSCH RODRIGUE ARCURI, LLC**

/s/ Blake J. Arcuri
BLAKE J. ARCURI (LSBN 32322)
LAURA C. RODRIGUE (LSBN 30428)
JASON P. WIXOM (LSBN 32273)
1615 Poydras Street, Suite 1250
New Orleans, Louisiana 70112
Tel:    (504) 592-4600
Fax:    (504) 592-4641
Email:  barcuri@fralawfirm.com
        lrodrigue@fralawfirm.com
        jwixom@fralawfirm.com
*Attorneys for Deputy Sainato*

## CERTIFICATE OF SERVICE

I do hereby certify that on this 15th day of November, 2024, a copy of the foregoing was sent by email to all counsel.

/s/ Blake J. Arcuri
BLAKE J. ARCURI